**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION (Dayton)**

| | | |
|---|---|---|
| **JEFF SMITH**<br>882 Sunset Drive<br>Englewood, OH 45322 | * | **CASE NO. 3:22-cv-00096** |
| | * | **DISTRICT JUDGE MICHAEL J. NEWMAN** |
| | * | |
| **Plaintiff,** | * | **MAGISTRATE JUDGE PETER B. SILVAIN, JR.** |
| vs. | * | |
| **CITY OF UNION, OHIO**<br>Union City Hall<br>118 North Main Street<br>Union, OH 45322 | * | **PLAINTIFF'S SECOND AMENDED COMPLAINT WITH JURY DEMAND ENDORSED HEREON** |
| | * | |
| **Defendant.** | * | |
| | * | |
| | * | |
| | * | |
| | * | |

Now comes the Plaintiff, Jeff Smith ("Mr. Smith"), by and through the undersigned counsel, and brings this Second Amended Complaint against Defendant, the City of Union (the "City"). This action alleges employment discrimination based on age, as well as retaliation. Mr. Smith's claims are asserted pursuant to the Americans with the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623 et. seq., and Ohio law.

**PARTIES AND JURISDICTION**

1. Mr. Smith is currently employed as a Patrol Officer for the City. He began his

employment with the City on February 14, 2003.

2. The City of Union is located in northern Montgomery County, Ohio with its City Hall located at 118 North Main Street, Union, OH 45322.

3. The City of Union Police Department is a distinct department of the City of Union, with its principal place of business also located at 118 North Main Street, Union, Ohio 45322.

4. All parties have submitted through their actions to the jurisdiction and venue of this Court.

5. At all times pertinent hereto, the parties conducted activity in Montgomery or Miami County giving rise to Mr. Smith's claims for relief, including the City's performance of logistics services at the City's office locations in Montgomery or Miami County.

6. Jurisdiction rests with this Court pursuant to 28 U.S.C. §1331, as this civil action arises under the ADA. As set forth in paragraph 29 below, Mr. Smith has exhausted his administrative remedies for bringing his age discrimination claims under the ADEA.

## FACTUAL ALLEGATIONS

7. Mr. Smith hereby incorporates completely the allegations set forth in the preceding paragraphs as if fully restated herein.

8. Mr. Smith is 51 years of age with a birthdate of May 12, 1969. At all relevant times, Mr. Smith was the second-oldest patrol officer at the City.

9. The Ohio Patrolmen's Benevolent Association ("OPBA") is a labor organization representing the City's patrol officers in the bargaining unit.

10. At all relevant times in this matter, Mr. Smith has been a bargaining unit member of the OPBA.

11. The OPBA and the City are parties to a Collective Bargaining Agreement ("CBA"),

which is applicable to the bargaining unit members, including Mr. Smith.

12. Pursuant to the CBA bargaining unit members may only be terminated for just cause.

13. The City alleged policy violations by Mr. Smith related to a pursuit incident on May 30, 2020 ("Pursuit Incident").

14. The City further alleged policy violations by Mr. Smith related to his response to a burglary on May 31, 2020 ("Burglary Incident").

15. The City notified Mr. Smith of its administrative investigation into the above-referenced conduct on June 4, 2020. The City placed Mr. Smith on paid administrative leave on June 11, 2020.

16. During a pre-disciplinary meeting held between the City on July 8, 2020, Mr. Smith's supervisor, Chief Michael Blackwell, stated that he had watched videos of younger patrol officers of the City and they did not make the same mistakes as Mr. Smith.

17. Other similarly situated and substantially younger patrol officers were not subject to disciplinary action for the same conduct that the City alleged was the reason for Mr. Smith's termination.

18. The City terminated Mr. Smith allegedly for the above-referenced conduct on or about August 3, 2020. Prior to his termination Mr. Smith had not received written discipline for the prior five (5) years.

19. Upon information and belief, subsequent to his termination, Mr. Smith's position was filled by a substantially younger officer, Officer Patrick Carey.

20. On or about August 6, 2020, the OPBA filed a grievance on behalf of Mr. Smith against the City for its violation of certain provisions of the CBA claiming that Mr. Smith was

terminated without cause.

21. Subsequently, Mr. Smith filed a discrimination charge with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") on January 8, 2021 concerning this incident.

22. On January 20, 2021 and February 9, 2021, hearings concerning this matter were held before the Arbitrator, Michael Paolucci (the "Arbitrator"). Both the OPBA and the City presented their evidence and testimony concerning Mr. Smith's termination.

23. On June 8, 2021, the Arbitrator sustained the grievance and issued his Opinion and Award. Mr. Smith's termination was rescinded and converted to a three (3) day suspension, and the City was ordered to return Mr. Smith to work with full back pay, a reinstatement of all seniority, and a make whole order to return him to the place he would have held but for the improper discharge. The basis for the Arbitrator's finding is that the OPBA proved beyond doubt that Mr. Smith's misconduct in connection with the Pursuit Incident and the Burglary Incident "was limited, should have been subject to the progressive disciplinary process, and did not rise to a level of seriousness that would justify his termination." (Arbitrator's Opinion and Award at p. 51).

24. The City's central allegation was that Mr. Smith improperly pursued a driver without justification in violation of Department Policy 307.3.1 (the "Pursuit Policy") (Arbitrator's Opinion and Award p. 33 and p. 51). With regard to this allegation, the Arbitrator found that Mr. Smith was not in violation of the Pursuit Policy as he viewed the reckless operation of a motor vehicle on private property, a violation of Ohio Revised Code §4511.201, a misdemeanor. Under the Pursuit Policy, officers are not prohibited from pursuing with lights and sirens a misdemeanor offender. The Arbitrator found that since the Pursuit Policy does not explicitly prohibit the activity that Mr. Smith engaged in, then discipline based on violation of the Pursuit Policy was without

4

merit. (Arbitrator's Opinion and Award at p. 16).

25. With regard to the Pursuit Incident, Officer Greg Redmon, a substantially younger officer, was not disciplined, despite him having received similar training as a detective and as an evidence technician to Mr. Smith.

26. With regard to the Burglary Incident, the Arbitrator noted that a similarly situated officer, Michael Hoover, was not disciplined. The Arbitrator concluded that "the City's investigation was flawed, that it reached incorrect conclusions, and that the decision to discipline [Mr. Smith] was factually incorrect." (Arbitrator's Opinion and Award at p. 58 and 59).

27. In reaching his decision the Arbitrator stated that, "the City's case against [Mr. Smith] was flawed from the beginning. Its unfair conclusions based on the proven facts show that it was overreaching in its evaluation of [Mr. Smith]. It is not clear why, and it is not necessary to determine why. What is fair is that the City overreacted to what occurred on May 30 and May 31, 2020..." Arbitrator's Opinion and Award at p. 59).

28. In reaching his decision, the Arbitrator further stated that, "It is not clear why the City took the action it did here, but there are indications that other motivations exist that are outside the scope of the undersigned's purview. What can be concluded is that the City could not sustain its burden of proving the central factual allegation against Grievant, and the remainder of its case became suspect." (Arbitrator's Opinion and Award at p. 55).

29. The OCRC subsequently issued its Determination finding of no probable cause that the City engaged in an unlawful discriminatory practice pursuant to Ohio Revised Code § 4112.02.

30. The EEOC subsequently adopted this decision by the OCRC. On January 12, 2022, the EEOC issued a Dismissal and Notice of Suit Rights to Mr. Smith (**Exhibit A**). Mr. Smith has thus fully complied with the prerequisites to jurisdiction before this Court under those statutes

which require administrative exhaustion.

## FIRST CLAIM FOR RELIEF
*(Age Discrimination in Employment Act of 1967)*

31. Mr. Smith hereby realleges and incorporates completely the allegations set forth in the preceding paragraphs as if fully restated herein.

32. The City's reasons for terminating Mr. Smith were a pretext for discrimination due to his age, and thus, the City discriminated against Mr. Smith in violation of 29 U.S.C. §623.

33. Mr. Smith was 51 years of age with over fifteen ("15") years of experience, and was therefore qualified for his position when the City terminated him.

34. As a result of the City's illegal actions, Mr. Smith has sustained economic losses, as well as the costs of bringing this action and attorneys' fees. Additionally, Mr. Smith has suffered severe emotional distress.

35. The City willfully violated Mr. Smith's rights under the ADEA and, as a result, is liable for damages.

## SECOND CLAIM FOR RELIEF
*(Ohio Civil Rights Act)*

36. Mr. Smith hereby realleges and incorporates completely the allegations set forth in the preceding paragraphs as if fully restated herein.

37. The City discriminated against Mr. Smith because of his age in violation of Ohio Revised Code § 4112.02, and terminated his employment on that basis.

38. As a result of the City's illegal actions, Mr. Smith has sustained economic losses, as well as the costs of bringing this action. Additionally, Mr. Smith has suffered humiliation, embarrassment and severe emotional distress. The City is responsible for Mr. Smith's damages pursuant to Ohio Revised Code § 4112.02.

## THIRD CLAIM FOR RELIEF
*(Unlawful Retaliation Under Federal and Ohio Law)*

39. Mr. Smith hereby realleges and incorporates completely the allegations set forth in the preceding paragraphs as if fully restated herein.

40. Since the Arbitrator reinstated Mr. Smith to his employment with the City, he has been subjected to various discriminatory acts in retaliation for Mr. Smith initiating, filing and pursuing his age discrimination charges related to his termination from employment.

41. On or about July 24, 2021, the City refused to bring Mr. Smith back without a fitness for duty certification, even though other substantially younger police officers had been on a leave of absence and were not similarly required to submit for a fitness for duty examination. As a result of this decision, The City delayed in returning Mr. Smith to employment until August, 2021.

42. On July 21, 2021, Police Officer Greg Redmon was promoted to the Lieutenant position. Lieutenant Redmon was substantially younger than Mr. Smith, and had less experience and fewer qualifications than Mr. Smith.

43. On July 28, 2021, The City hired Jason Jacobs as a Lieutenant, who previously worked for the Brookville Police Department. Lieutenant Jacobs was substantially younger than Mr. Smith and had less experience and was less qualified for the position.

44. On or about August 13, 2021, The City completed contract negotiations with the Fraternal Order of Police ("FOP"), the new labor organization representing the police officers. The City denied Mr. Smith a raise for 2021, while the rest of the department received substantial raises. For the years 2022 and 2023, all other employees received much higher percentage raises than Mr. Smith did.

45. On or about September 30, 2021, Mr. Smith was placed on an Employee Performance Improvement Plan ("EPIP") for being late to work even though he had explained that

7

the reason was due to a scheduling issue.

46. On or about October 6, 2021, Mr. Smith was ordered to return back from a vacation leave due to mandatory training, even though a younger officer was permitted to miss the mandatory training while he was on vacation.

47. On October 22, 2021, Mr. Smith received a letter of reprimand for not remembering a conversation that in the end was proven not to have occurred. The FOP filed a grievance and on December 7, 2021, the letter of reprimand was removed and the grievance was sustained.

48. In December, 2021, Mr. Smith received a yearly evaluation which was adverse and inaccurate.

49. On or about January 4, 2021, Mark Charles was hired as a lieutenant instead of Mr. Smith even though Mr. Smith had more experience and qualifications than he did, and he is substantially younger than Mr. Smith is.

50. Throughout the time that Mr. Smith has returned to work after being reinstated by order of the arbitrator, Captain Chris Allen has continuously belittled Mr. Smith and made degrading comments to him in front of other members of the department. He continued to make such remarks almost on a weekly basis, even though Mr. Smith requested him to stop doing so.

51. The allegations set forth in paragraphs 38 - 49 above were contained in a Discrimination Charge filed by Mr. Smith with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC") on May 16, 2022.

52. Mr. Smith subsequently requested withdraw of his charges from the OCRC and EEOC and requested the OCRC and EEOC to issue letters to sue, having waited the required sixty days to do so.

53. In response, the OCRC issued a Notice of Right to Sue dated September 1, 2022, a

copy of which is attached hereto as **Exhibit B.** On October 21, 2022, the EEOC issued its Notice of Right to Sue, a copy of which is attached hereto as **Exhibit C.**

54. By filing charges of retaliation with the OCRC and the EEOC, Mr. Smith engaged in protected activity.

55. In response to his engaging in protected activity, Mr. Smith suffered adverse employment actions as described in paragraphs 38 – 49 above.

56. The adverse actions taken against Mr. Smith described in paragraphs 38 – 49 above resulted from and were motivated by Mr. Smith's filing the discrimination charges described above in connection with the City terminating his employment.

57. As a result, the City unlawfully retaliated against Mr. Smith in violation of 20 U.S.C. Section 623.

58. As a further result of the City's conduct, Mr. Smith was unlawfully retaliated against by the City in violation of Ohio Revised Code Section 4112.02.

59. As a result of the City's illegal actions, Mr. Smith has sustained economic losses, as well as humiliation, embarrassment, and severe emotional distress. The City is responsible for Mr. Smith's damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Mr. Smith prays that this Court enter judgment against the City as follows:

(i). for compensatory damages in an amount to be shown at trial;

(ii). for punitive damages in an amount to be shown at trial;

(iii). for his reasonable attorney's fees and costs;

(iv).   With regard to Mr. Smith's retaliation claims, Mr. Smith seeks the relief described in (i) – (iv) above; and

(v).    For such additional relief as is just and proper.

Respectfully submitted,

*/s/ Matthew D. Stokely*
Matthew D. Stokely (0062971)
PICKREL, SCHAEFFER & EBELING CO., LPA
2700 Stratacache Tower
Dayton, Ohio 45423
T: (937) 223-1130 / F: (937) 223-0339
E: mstokely@pselaw.com
*Attorney for Mr. Smith*

**JURY DEMAND**

Mr. Smith demands a trial by jury on all issues so triable.

*/s/ Matthew D. Stokely*
Matthew D. Stokely (0062971)
PICKREL, SCHAEFFER & EBELING CO., LPA

10

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed using the Court's ECF system, this 13th day of July, 2023, which will serve notice of the filing via electronic mail upon:

Beverly A. Meyer, Trial Counsel (0063807)
Arthur P. Schoulties, Co-Counsel (0086900)
BRICKER & ECKLER LLP
312 N. Patterson Blvd., Suite 200
Dayton, Ohio 45402
Telephone: 937.224.5300
Facsimile: 937.224.5301
E-mail: bmeyer@bricker.com
aschoulties@bricker.com
Attorneys for Defendant