**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| **JEFF SMITH,** | : | |
| | : | |
| **Plaintiff,** | : | **Case No. 3:22-cv-00096** |
| | : | |
| **v.** | : | **Judge Michael J. Newman** |
| | : | |
| **CITY OF UNION, OHIO** | : | **Magistrate Judge Peter B. Silvain Jr.** |
| | : | |
| **Defendant.** | : | |

---

### DEFENDANT CITY OF UNION, OHIO'S REPLY BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

---

Now comes Defendant, City of Union, Ohio (hereinafter "Defendant" and/or "the City"), by and through counsel, and hereby submits its Reply Brief in Support of its Motion for Summary Judgment. As set forth in Defendant's Motion for Summary Judgment, and in the accompanying Reply Brief herein, no genuine issue of material fact remains and, accordingly, Defendant is entitled to judgment as a matter of law on each of Plaintiff's claims.

Respectfully submitted,

*/s/ Arthur P. Schoulties*               
Beverly A. Meyer, Trial Counsel (0063807)
Arthur P. Schoulties, Co-Counsel (0086900)
Benjamin J. Reeb, Co-Counsel (100018)
BRICKER GRAYDON LLP
312 N. Patterson Blvd., Suite 200
Dayton, Ohio 45402
Telephone:  937.224.5300
Facsimile:  937.224.5301
E-mail:  bmeyer@brickergraydon.com
        aschoulties@brickergraydon.com
        breeb@brickergraydon.com
*Attorneys for Defendant*

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ................................................................................................ 1

II.     LAW AND ARGUMENT ................................................................................... 4

        A.      Plaintiff's Age Discrimination Claim Fails as a Matter of Law. ........................... 4

                1.      Plaintiff cannot identify any statements or remarks that could constitute direct evidence of age discrimination. ................................................................... 5

                2.      Plaintiff cannot demonstrate sufficient circumstantial evidence of age discrimination. ....................................................................................... 8

                3.      Even if Plaintiff could establish a prima facie case of age discrimination, which he cannot, Defendant had legitimate nondiscriminatory reasons for its actions that were not pretext for discrimination. .................................................. 10

        B.      Plaintiff's Retaliation Claim Fails as a Matter of Law. ........................................ 12

                1.      Plaintiff cannot establish any adverse employment action was taken against him. ............................................................................................. 13

                2.      Plaintiff has failed to establish the necessary causal link, and in fact, fails to offer any argument on this required element of his prima facie claim. ............ 20

                3.      Defendant had a legitimate nonretaliatory purpose for referring Plaintiff for a fitness for duty evaluation, and Plaintiff has failed to show that Defendant's nonretaliatory purposes are pretext for retaliation. ............................................... 22

III.    CONCLUSION.................................................................................................... 24

        CERTIFICATE OF SERVICE……………………………………………………..25

i

## REPLY MEMORANDUM

### I.     INTRODUCTION

Plaintiff has failed to sufficiently demonstrate any genuine issue of material fact relative to his age discrimination and retaliation claims.[1] As for his age discrimination claim, Plaintiff has failed to present the necessary direct or circumstantial evidence from which a jury could infer a discriminatory motive. Likewise, with regard to his retaliation claim, Plaintiff has not demonstrated he was subject to any adverse employment action, let alone an adverse employment action causally connected to the filing of his discrimination charges.  Accordingly, Plaintiff has failed to establish a prima facie case for his age discrimination and retaliation claims and, in turn, Plaintiff's claims fail as a matter of law and Defendant is entitled to summary judgment.  Even if the Court concludes Plaintiff has carried his burden with respect to establishing a prima facie case for either claim, the Defendant has demonstrated legitimate, nondiscriminatory reasons for each of its actions.  Accordingly, and alternatively, both of Plaintiff's claims fail as a matter of law and the Defendant is entitled to summary judgment.

Plaintiff spends an inordinate amount of time in his Memorandum in Opposition to Defendant's Motion for Summary Judgment (hereinafter, Plaintiff's "Response") citing Arbitrator Paolucci's Opinion and Award issued on June 8, 2021, and in fact, insinuates Defendant should have afforded more attention to the Opinion and Award in its Motion for Summary Judgment.[2]

---

[1] Additionally, Plaintiff, in his Response, failed to address many of Defendant's arguments pertaining to both Plaintiff's age discrimination and retaliation claims.  This Court and the Sixth Circuit have made clear that a plaintiff is deemed to have abandoned a claim or related argument when a plaintiff fails to address it in response to a motion for summary judgment.  *Hopper v. Montgomery Cnty. Sheriff*, 310 F.Supp.3d 911, 933 (S.D. Ohio 2017) (citing *Brown v. VHS of Michigan, Inc.*, 545 Fed.Appx. 368, 372 (6th Cir. 2013)).

[2] In Plaintiff's Response, Plaintiff relies on the following three documents as exhibits: Exhibit 1 – Opinion and Award of Arbitrator Michael Paolucci; Exhibit 2 – Case information for Vandalia Municipal Court case CRB2001080; Exhibit 3 – City of Union 2021 Contract Negotiation Proposals. None of these documents are properly authenticated by affidavit or otherwise, and Exhibits 2 and 3 were not even made part of the record during discovery. The Sixth

1

Defendant did not extensively rely on and/or cite to the Opinion and Award for the same reason it did not extensively rely on and/or cite to the Ohio Civil Rights Commission and Equal Employment Opportunity Commission's determinations of No Probable Cause on both of Plaintiff's charges of discrimination—they are not determinative of Plaintiff's claims of age discrimination and retaliation under federal and Ohio law, and certainly not binding on this court's resolution of those claims. As stated by the Sixth Circuit in *Nance v. Goodyear Tire & Rubber Co.*, "[w]hile the expertise of arbitrators lies in the application of facts to the terms of an employee's contract or collective bargaining agreement, the expertise of federal courts lies in the application of facts to anti-discrimination statutes." *Nance v. Goodyear Tire & Rubber Co.*, 527 F.3d 539, 548 (6th Cir. 2008). Thus, "when an employee such as [Plaintiff] seeks to vindicate h[is] federal rights to be free from discrimination, [the court] must review all factual issues—including contractual ones—de novo. . . ." *Id*. at 549.

Arbitrator Paolucci was contractually charged with determining whether just cause for Plaintiff's discipline existed under the collective bargaining agreement between the City of Union and the police union, applying the seven tenets of the arbitral just cause standard. Arbitrator Paolucci found that just cause for discipline did, in fact, exist under that standard and ordered Plaintiff's disciplinary suspension. This Court, conversely, is charged with determining whether the City unlawfully discriminated against Plaintiff, applying the principles and analyses applicable to federal and state age discrimination and retaliation claims. In that regard, Plaintiff cannot

---

Circuit has "repeated[ly] emphasized that unauthenticated documents do not meet the requirements of Rule 56(e)." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citations omitted), *see also*, *Tillman v. Mausser*, No. 2:09-CV-904, 2011 WL 1659387, at *5 (S.D. Ohio May 2, 2011) ("[D]ocuments offered in support of (or against) summary judgment must be admissible, i.e., authenticated by affidavit."). Thus, Plaintiff's Exhibits must be disregarded. *See, e.g., Moore v. Holbrook*, 2 F.3d 697, 699 (6th Cir. 1993). Moreover, none of Plaintiff's Exhibits, even if admissible, add anything to the relevant issues before the Court.

19071760v1

establish that his age was a factor, much less *the determining* factor, in his termination from employment. The evidence further does not support the conclusion that the City unlawfully retaliated against Plaintiff. Instead, each of the City's actions is supported by legitimate and non-discriminatory reasons.

Here, Plaintiff's *entire* age discrimination claim is predicated on a single stray, isolated comment that Chief Blackwell made during a pre-disciplinary meeting held July 8, 2020. As explained in Defendant's Motion for Summary Judgment, and reiterated herein, said comment cannot, as a matter of law, constitute direct evidence of age discrimination. Additionally, the statement is entirely insufficient to constitute circumstantial evidence of age discrimination, especially considering Plaintiff cannot point to a younger, similarly situated individual who was treated differently than himself.

Plaintiff's argument that Officer Greg Redmon was a similarly situated employee treated more favorably than him is wholly unsupported by the record. To the contrary, the record clearly demonstrates Defendant's actions with respect to Plaintiff were in response to Plaintiff's policy violations on May 30th-May 31st, 2020, and other instances of misconduct dating back to 2013. Officer Redmon, while present for the events on May 30th, 2020, did not engage in the same, or similar, misconduct as Plaintiff on that date. Additionally, Officer Redmon was not even present for the events that took place on May 31st, 2020. Lastly, Officer Redmon did not engage in any of the misconduct Plaintiff engaged in prior to May 30th-May 31st of 2020. All of the bases for Defendant's actions are accounted for in Defendant's August 30th, 2020 Disciplinary Action letter to Plaintiff, which Plaintiff conveniently leaves out of his Response. Instead, Plaintiff attempts to isolate the events of May 30th, 2020 for his argument that Officer Redmon was a similarly situated employee. A more comprehensive review of the record demonstrates that Defendant's actions

3

relative to Plaintiff were based on multiple instances of Plaintiff's misconduct that in no way involved Officer Redmon. Accordingly, Plaintiff and Officer Redmon were not similarly situated employees.

Similarly, Plaintiff's *entire* retaliation claim is predicated upon the Defendant's decision to require him to undergo a basic fitness for duty examination prior to his return to work as a law enforcement officer. Plaintiff contends this conduct constituted an adverse employment action. However, as explained in Defendant's Motion for Summary Judgment, and reiterated herein, such conduct does not constitute an adverse employment action as a matter of law. Defendant had valid reasons for requiring a fitness for duty examination. Plaintiff unequivocally, and repeatedly, stated that stress was a determinative factor in his actions back in May 2020 and that prior to his reinstatement he had not performed any law enforcement work for over a year. Under such circumstances, the City—for the sake of the safety of Plaintiff, his colleagues and the public, and also the protection of the City—had an affirmative duty to order the fitness for duty examination and did so. It was neither unreasonable nor retaliatory for the City to be fully satisfied that it could safely place Plaintiff back in a patrol car and carrying a weapon before returning him to work. It cannot be successfully argued that Defendant's conduct was somehow subterfuge for retaliating against the Plaintiff for initiating and filing discrimination charges. Accordingly, Plaintiff's retaliation claim fails as a matter of law.

## II.   LAW AND ARGUMENT

### A.  Plaintiff's Age Discrimination Claim Fails as a Matter of Law.

Under the ADEA, the burden of persuasion remains on a plaintiff to prove by a preponderance of the evidence "that age was the 'but-for' cause of their employer's adverse action." *Gross v. FBL Fin. Servs.*, Inc., 557 U.S. 167, 177-78 (2009). "This requires showing that

4

age was the determinative reason they were terminated; that is, they must show 'that age was ***the "reason"*** that the employer decided to act.'" *Pelcha v. MW Bancorp, Inc.*, 988 F.3d 318, 324 (6th Cir. 2021) (quoting *Scheick v. Tecumseh Pub. Schs.*, 766 F.3d 523, 529 (6th Cir. 2014)) (emphasis added). A plaintiff can only survive a motion for summary judgment by presenting direct evidence of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive. *Id*. As explained in Defendant's Motion for Summary Judgment, and reiterated herein, no such evidence exists in this matter.

### 1. Plaintiff cannot identify any statements or remarks that could constitute direct evidence of age discrimination.

Plaintiff points to a single, stray comment made by Chief Blackwell in a feeble attempt to show direct evidence of age discrimination. As alleged in Plaintiff's Complaint, during a pre-disciplinary meeting held on July 8, 2020, Chief Blackwell stated that he watched videos of younger patrol officers and they did not make the same mistakes as Plaintiff. (Second Amended Complaint, Doc. 50, PageID 185). This comment, which has been drastically and conveniently mischaracterized by Plaintiff throughout the course of this action, including in his Response, cannot, as a matter of law, constitute direct evidence of age discrimination under this Court's clear precedent.

"Direct evidence is evidence which, if believed, would require the conclusion that age was the but-for cause of the employment decision." *Pearo v. Hansen & Adkins Auto Transport, Inc.*, 2015 WL 1469163, at *2 (S.D. Ohio Mar. 30, 2015) (citing *Bartlett v. Gates*, 421 Fed.Appx. 485, 488-89 (6th Cir. 2010)). Specifically, it is "'evidence of conduct or statements by persons involved in making the employment decision directly manifesting a discriminatory attitude, of a sufficient quantum and gravity that would allow the factfinder to conclude that attitude more likely than not

5

was a motivating factor in the employment decision.'" *Scott v. Potter*, 182 Fed.Appx. 521, 525-26 (6th Cir. 2006) (quoting *Erickson v. Farmland Indus., Inc.*, 271 F.3d 718, 724 (8th Cir. 2001))." "'Only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age,' satisfy these criteria.'" *Id.* at 526 (quoting *Carter v. City of Miami*, 870 F.2d 578, 582 (11th Cir. 1989)). Moreover, "'isolated and ambiguous comments are too abstract, in addition to being irrelevant and prejudicial, to support a finding of age discrimination.'" *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1025 (6th Cir. 1993) (quoting *Gagné v. Northwestern Nat. Ins. Co.*, 881 F.2d 309, 314 (6th Cir.1989)).

The single statement at issue, which Chief Blackwell admitted to making, was that he watched videos of younger patrol officers and they did not make the same mistakes as Plaintiff. (Blackwell Dep. 31:12-15). Relative to that statement, Chief Blackwell made clear that when he said "younger, [he] meant lesser experienced officer" and that it was his belief that a "lesser experienced officer would have done better" than Plaintiff under the circumstances. (*Id.* at 31:12-32:1). When viewed in total, Chief Blackwell's deposition testimony regarding the statement clearly shows the statement had nothing to do with Plaintiff's age, but rather, contemplated issues concerning Plaintiff's high level of training and experience in combination with the severity and seriousness of Plaintiff's mistakes.

In his Response, Plaintiff deceptively refers to "comments" made by Chief Blackwell. (Plaintiff's Response, Doc. 67, PageID 2372). It was a single comment. Plaintiff then cherry-picks language from Chief Blackwell's testimony during his deposition regarding that single comment in an attempt to not only mischaracterize that single comment and Chief Blackwell's testimony about that single comment, but also create the false appearance that more than one comment was made during Plaintiff's disciplinary process.

6

Specifically, Plaintiff cites Chief Blackwell's testimonial statement that "I think a lesser experienced officer would have done better" without providing any of Chief Blackwell's subsequent testimony explaining what he meant by this. (*Id*. at PageID 2371). When viewing the subsequent explanatory testimony, it is clear Chief Blackwell's focus was not on Plaintiff's age, but instead on the concern that he had seen lesser experienced officers, on videos, and on occasion within those videos, not make the same mistakes as Plaintiff. Specifically, Chief Blackwell stated "[b]asically, on calling out a pursuit. A lesser experienced officer, I've witnessed on videos calling out pursuits better than what Jeff did." (Blackwell Dep. at 32:18-21). Furthermore, Chief Blackwell made clear that he was "not saying *all*" lesser experienced officers "know at least to do better communicating than what Jeff was doing[.]" (*Id*. at 33:12-15). Instead, he was simply attesting that he had witnessed *some*, but not all, lesser experienced officers communicate more effectively than Plaintiff. (*Id*.) The statement that lesser experienced officers would have done better provides critical insight into the unsatisfactory level at which Plaintiff performed his policing duties, despite the inordinate amount of training he had received from the City.

When viewing Chief Blackwell's testimony in aggregate, it is clear the comment was an isolated remark. Such a remark, as a matter of law, cannot suffice as direct evidence of age discrimination. (*See Cooley v. Carmike Cinemas, Inc.,* 25 F.3d 1325, 1330–31 (6th Cir.1994)). Consequently, Plaintiff must establish sufficient circumstantial evidence in support of his age discrimination claim. As explained below, Plaintiff also cannot demonstrate the necessary circumstantial evidence to establish a prima facie case of age discrimination.

7

### 2. Plaintiff cannot demonstrate sufficient circumstantial evidence of age discrimination.

Plaintiff's proffered circumstantial evidence consists of, in total, the aforementioned isolated remark from Chief Blackwell coupled with the contention that Officer Greg Redmon was a similarly situated employee treated more favorably than him. When considered in total, the record makes clear that Chief Blackwell's comment was an isolated remark with no discriminatory animus.

Additionally, when considered in total, the record makes extremely clear that Plaintiff and Officer Redmon were not similarly situated employees. Plaintiff inexplicably contends "[t]here is sufficient evidence of record to demonstrate that Officer Greg Redmon was a similarly situated employee, not a member of the Plaintiff's protected class, who was treated more favorably than [Plaintiff]." (Plaintiff's Response, Doc. 67, PageID 2375). The "evidence of record" that Plaintiff selectively chooses to employ here is woefully incomplete in relation to whether Plaintiff and Officer Redmon were similarly situated employees. Plaintiff cites to the testimony of Officer Redmon and Captain Chris Allen, but only inasmuch as that testimony relates to the events of May 30th, 2020. (*Id.* at PageID 2376-2378). Officer Redmon testified that he made some mistakes relative to the pursuit incident on May 30th, 2020. (Redmon Dep. at 13-15). Captain Allen testified that Officer Redmon was involved in the pursuit and that he "felt based on what [he] saw [Officer Redmon] should be given a letter of reprimand" and recommended same to Chief Blackwell. (Allen Dep. at 50:1-18). In prior arbitration testimony, Captain Allen testified that he did not recommend discipline for Officer Redmon for the mistakes he made on May 30th, 2020. (Arb. Tr., Vol. 1, Allen 170:5-13). Captain Allen's contradictory statements are not material here as they in no way speak to whether Plaintiff and Officer Redmon were similarly situated employees.

8

Moreover, and importantly here, this testimony focuses exclusively on conduct relative to May 30th, 2020.  Plaintiff fails to acknowledge other relevant aspects of the record attesting to Plaintiff's misconduct before and after May 30th differentiating his behavior from Officer Redmon's and establishing that they are not similarly situated for these purposes.  Plaintiff's termination was the result of his conduct occurring during a series of events over the course of two days and the prior discipline he had received from the City.

The bases for Defendant's disciplinary action against Plaintiff are summarily documented in the Defendant's August 30th, 2020 Disciplinary Action letter to Plaintiff.  Plaintiff conveniently fails to cite the letter in his Response.  The letter makes clear that the Defendant, in determining the level of discipline to be imposed on Plaintiff, took "into account the nature of the violation(s), the [Plaintiff's] prior history of discipline and the [Plaintiff's] record of performance and conduct." (Smith Dep. at Exhibit 5, pg. 4).  Specifically, Defendant found the policy violations Plaintiff committed on May 30th *and* 31st of 2020 regarding the pursuit, conduct at the crash site that followed, and collection of evidence to be serious violations, given the potential for serious injury to the public and Plaintiff that could have resulted from Plaintiff's actions.  (*Id.*).  Moreover, Defendant took into consideration the fact that Plaintiff was issued a 5-day suspension in December of 2014 for personal use of the Ohio Law Enforcement Gateway, conduct which is a potential felony under R.C. 2913.04.  (*Id.*).  Prior to this incident, Plaintiff was issued a letter of reprimand for violating policy related to property procedures.  (*Id.*)  In addition, Defendant considered Plaintiff's numerous EPIPs for improper handling of evidence, failure to complete paperwork appropriately and in a timely manner, failure to effectively perform the duties of a field training officer, operating a cruiser in an unsafe manner, failure to wear protective equipment,

9

failure to follow through with assignments in a timely manner, carelessness in inspecting cruiser after transport of a suspect, and failure to complete reports in a timely manner. (*Id.*).

Defendant maintains, for those reasons stated in its Motion for Summary Judgment, and reiterated herein, that Plaintiff and Officer Redmon did not engage in the same or similar conduct on May 30th, 2020 and thus were not similarly situated employees for purposes of Plaintiff's age discrimination claim. While Officer Redmon did make *some* of the same mistakes as Plaintiff, he did *not* make the same mistakes Plaintiff made that put the public, Officer Redmon, and Plaintiff at risk for serious injury that day. Regardless, and as made clear above, the Defendant's bases for its actions went well beyond Plaintiff's misconduct on May 30th. Defendant also took into consideration Plaintiff's serious misconduct on May 31st and many prior instances of misconduct in determining the level of discipline to be imposed. Plaintiff readily admits Officer Redmon was not involved in the events on May 31st. (Smith Dep. at 46:9-21). Additionally, Plaintiff does not, and cannot, allege Officer Redmon engaged in any of Plaintiff's additional past misconduct, all of which Defendant appropriately took into consideration when taking disciplinary action against him. To that end, and as a matter of law, Plaintiff and Officer Redmon were not similarly situated employees. Accordingly, Plaintiff has failed to establish a prima facie case for age discrimination using circumstantial evidence and, in turn, his age discrimination claim fails as a matter of law.

**3. Even if Plaintiff could establish a prima facie case of age discrimination, which he cannot, Defendant had legitimate nondiscriminatory reasons for its actions that were not pretext for discrimination.**

Plaintiff now contends that Defendant's proffered reason for Plaintiff's termination (i.e., misconduct on May 30th and May 31st and many past instances of misconduct) is pretext considering it has no basis in fact and/or is otherwise insufficient to explain Defendant's actions. (Plaintiff's Response, Doc. 67, PageID 2379).

10

In arguing Defendant's proffered reason for Plaintiff's termination has no basis in fact, Plaintiff relies solely on the issue of whether Plaintiff's pursuit, and the continuation of the pursuit, was justified under the circumstances. (*Id.* at PageID 2380). Once again, Plaintiff fails to acknowledge the sum of his misconduct, and instead attempts to misdirect and isolate the Court's attention to one alleged factor—instead of the many legitimate factors—that Defendant considered prior to taking disciplinary action. Moreover, Plaintiff has affirmatively admitted to *all* of his misconduct except for the unjustified pursuit. (Arb. Tr., Vol. 2, Smith 460, 471, 484, 495, 498, 502, 524, 547, 559. Smith Dep. at 18:15-20:16). It is unclear to the undersigned how Plaintiff can contend Defendant's actions were pretext, with no basis in fact, when Plaintiff himself admits to *all* but one instance of the misconduct that served as the factual bases for Defendant's disciplinary actions. Such a contention squarely contradicts Plaintiff's own sworn testimony. Accordingly, Plaintiff has failed to establish sufficient evidence of pretext under a theory that Defendant's proffered reason for Plaintiff's termination had no basis in fact.

In arguing Defendant's proffered reason for Plaintiff's termination is insufficient to explain Defendant's action, Plaintiff correctly states that he must produce evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in *substantially identical conduct* to that which the employer contends motivated its discharge of the plaintiff. (Plaintiff's Response, Doc. 67, at PageID 2381. *McNeal v. City of Blue Ash*, 2023 WL 2184598 at *8) (emphasis added). However, and as explained in detail above, Officer Redmon, who is the only remaining comparator to whom Plaintiff cites, did not engage in substantially similar or substantially identical conduct as Plaintiff. Accordingly, Plaintiff failed to establish sufficient evidence of pretext under a theory that Defendant's proffered reasons for terminating Plaintiff were insufficient to explain Defendant's actions.

11

As noted in Defendant's Motion for Summary Judgment, its actions were reasonable, legitimate, nondiscriminatory and otherwise supported by Plaintiff's conduct. Age was clearly not the reason, nor was it even a factor in Defendant's actions. In his Response, Plaintiff has offered nothing of material significance to refute this contention. Defendant's proffered reasons for terminating Plaintiff had both a basis in fact and were unquestionably sufficient to warrant Defendant's actions. Accordingly, Plaintiff cannot prove that Defendant's proffered reasons for termination were pretext for age discrimination.

**B. Plaintiff's Retaliation Claim Fails as a Matter of Law.**

Plaintiff contends he was retaliated against for "initiating, filing and pursuing his age discrimination charges related to his termination from employment." (Second Amended Complaint, Doc. 50, PageID 189). However, and as explained in detail in Defendant's Motion for Summary Judgment, Plaintiff cannot establish a prima facie case of retaliation, as he cannot point to any adverse employment action, let alone an adverse employment action causally connected to the filing of his discrimination charges. The only alleged adverse employment action on which Plaintiff seeks to establish his retaliation claim is Defendant's decision to require Plaintiff to submit to a psychological fitness for duty examination prior to his return to work. (Plaintiff's Response, Doc. 67, PageID 2382).[3] The requirement that Plaintiff submit to a fitness for duty examination prior to returning to work clearly does not constitute an adverse employment action, and Plaintiff's Response only provides further support for this conclusion.

---

[3] Plaintiff also refers to repeated instances of what he characterizes as discipline in his Memorandum. However, it is uncontroverted that the EPIPs issued to Plaintiff are not disciplinary, as established by the express terms in Section 8.06 of the collective bargaining agreement covering his employment. (Plaintiff Dep., Ex. 11 Current CBA; Plaintiff Dep. 80-81). In the City of Union, EPIPs are instructive. They do not support any claim that the City retaliated against Plaintiff in this matter.

12

**1. Plaintiff cannot establish any adverse employment action was taken against him.**

Sixth Circuit case law is clear that "employers may 'requir[e] mental and physical exams as a precondition to returning to work,'" and as such, "'an examination ordered for valid reasons can neither count as an adverse job action nor prove discrimination.'" *Pena v. City of Flushing*, 651 Fed.Appx. 415, 422 (6th Cir. 2016) (quoting *Sullivan v. River Valley School Dist.*, 197 F.3d 804, 812-13 (6th Cir. 1999)). Moreover, the collective bargaining agreement covering Plaintiff's employment specifically provides "if the City has reasonable cause to believe an employee is mentally or physically unable to perform required duties, the City may require the employee to take an examination to determine physical or mental capacity to perform required duties." (Plaintiff Dep., Exs. 10 Previous CBA, 11 Current CBA; Plaintiff Dep. 80-81). Thus, pursuant to clear Sixth Circuit precedent and the collective bargaining agreement governing the terms and conditions of Plaintiff's employment, Defendant's referral of Plaintiff for a fitness for duty examination for valid reasons cannot be regarded as an adverse employment action. This is especially true given Plaintiff's role as a law enforcement officer.  The Sixth Circuit has recognized that "'special circumstances' may exist in workplaces where employees respond to stressful situations and shoulder responsibility for public safety."  *Kroll v. White Lake Ambulance Auth.*, 763 F.3d 619, 626 (6th Cir. 2014).  Specifically, "[i]n these 'public safety' workplaces, an employer may be justified in requesting a psychological exam on slighter evidence than in other types of workplaces because employees are 'in positions where they can do tremendous harm if they act irrationally,' and thus they pose a greater threat to themselves and others." *Id.* (quoting *Watson v. City of Miami Beach*, 177 F.3d 932, 935 (11th Cir. 1999)).

13

As explained in Defendant's Motion for Summary Judgment, the fitness for duty examination was unequivocally conducted for valid reasons. Namely, during the administrative interview pertaining to Plaintiff's conduct and policy violations during the May 30th – 31st, 2020 incidents, Plaintiff repeatedly indicated his conduct was the result of stress. (Admin. Inter. Cam; Plaintiff Dep. 79:2-7). Plaintiff acknowledged this during his deposition. (Plaintiff Dep. 79:2-7). Further, from the time Plaintiff was placed on administrative leave in June 2020 to the time he returned to work in August, 2021, Plaintiff had not performed any police work whatsoever. (Plaintiff Dep. 79:8-13). Thus, it was Defendant's firm and valid belief that the fitness for duty examination was required to ensure that it was safe, both for Plaintiff and the community at large, to return Plaintiff to his position as a patrol officer.  (Blackwell Dep. 53; Applegate Dep. 22).

As for the reasonableness of Defendant's decision to refer Plaintiff for a fitness for duty examination, Plaintiff asserts only one argument in his Response.  Namely, he states "It is difficult to imagine that the City would have had actual, 'reasonable cause' to infer that Smith was presently mentally unable to perform his required duties, and especially since Smith had participated in a lengthy arbitration process since then. Which he won." (Plaintiff's Response, Doc. 67, PageID 2384).

Plaintiff's argument is incomprehensible; the fact that Plaintiff participated in the arbitration process has absolutely nothing to do with Defendant's valid belief that a basic fitness for duty examination was necessary prior to Plaintiff's return to his employment as a patrol officer. Plaintiff's prior statements that the mistakes he made during the May 30th–31st, 2020 incidents were the result of self-admitted stress, and the fact that Plaintiff had not worked in any capacity as a law enforcement officer for over a year at the time he was to return to work, certainly support Defendant's decision to refer Plaintiff for a fitness for duty examination.  Plaintiff made a series

14

of unacceptable mistakes over a two-day period—all of which he has affirmatively admitted to with the exception of the unjustified pursuit (Arb. Tr., Vol. 2, Smith 460, 471, 484, 495, 498, 502, 524, 547, 559)—and he repeatedly attributed these mistakes to the stress he experienced on those days. (Admin. Inter. Cam; Plaintiff Dep. 79:2-7). An employer certainly has a valid reason to examine an employee's mental state when said employee makes repeated stress-induced mistakes of a serious nature while on duty. This is especially true in the policing context, such as here, where Plaintiff "shoulder[s] responsibility for public safety" and thus, is "'in [a] position[] where [he] can do tremendous harm if [he] acts irrationally.'" *Kroll*, 763 F.3d at 626 (quoting *Watson*, 177 F.3d at 935). To hold otherwise would put city police departments in an impossible position wherein they cannot adequately take all reasonably necessary measures to protect the citizens in their respective communities.

Notwithstanding the fact that the Sixth Circuit has exempted fitness for duty examinations from being adverse employment actions if they are conducted for valid reasons, Defendant's referral of plaintiff for a fitness for duty examination would clearly not rise to the level of an adverse employment action as that term is defined and interpreted. "The Sixth Circuit defines an adverse employment action as a 'materially adverse change in the terms or conditions of [one's] employment.'" *Hodges v. City of Milford*, 918 F.Supp.2d 721, 735 (S.D. Ohio 2013) (quoting *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)). "A 'materially adverse' change in the terms or conditions of employment is typically characterized 'by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities.'" *Momah v. Dominguez*, 239 Fed.Appx. 114, 123 (6th Cir. 2007) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). "A change in employment conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities, [thus, the Sixth

15

Circuit has] held that *de minimis* employment actions, such as reassignments without changes in salary, benefits, title, or work hours usually do not constitute adverse employment actions." *Broska v. Henderson*, 70 Fed.Appx. 262, 267 (6th Cir. 2003).

The record is clear in this case that the fitness for duty examination was not a materially adverse change in the terms or conditions of Plaintiff's employment. In his Response, Plaintiff first contends that the fitness for duty examination delayed his return to work. (Plaintiff's Response, Doc. 67, PageId 2382). Although Plaintiff's contention that Defendant delayed returning him to work is completely unfounded, as will be explained below, the more important point here is that, even assuming purely for argument's sake that a minor delay occurred, it would not constitute an adverse employment action. The fitness for duty examination took place on July 16, 2021, and Plaintiff was returned to work exactly a month later on August 16, 2021. (Smith Dep. 128:11-21). It is undisputed that Plaintiff was compensated in full for all backpay between the time of his termination on August 3, 2020, and his return to work on August 16, 2021. (*Id.* at 163:3-7). Plaintiff cannot plausibly argue that the minimal period of time between his fitness for duty examination and his return to work, for which he was fully compensated, constituted a "'materially adverse change in the terms or conditions of [his] employment.'" *Hodges v. City of Milford*, 918 F.Supp.2d 721, 735 (S.D. Ohio 2013) (quoting *Kocsis v. Multi-Care mgmt.., Inc.*, 97 F.3d 876, 885 (6th Cir. 1996)).

Notwithstanding the forgoing, Plaintiff's contention that Defendant delayed his return to work is completely unfounded. Plaintiff has not identified any evidentiary materials showing when Defendant actually received the fitness for duty report from Dr. Quarry. Instead, Plaintiff merely points to statements that were supposedly made to him by Dr. Quarry, but again he fails to cite any evidentiary materials save for his own self-serving deposition testimony. (*See* Plaintiff's

16

Response, Doc. 67, PageID 2383). Any such statements that Plaintiff attributes to Dr. Quarry are clearly hearsay, as they are out of court statements made by a declarant that are being offered for the truth of the matter asserted. Fed. R. Evid. 802(c). And, as the Sixth Circuit has made clear, "at summary judgment, hearsay 'must be disregarded.'" *M.J. by and through S.J. v. Akron City School District Board of Education*, 1 4th 436, 447 (6th Cir. 2021) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1189 (6th Cir. 1997)). Thus, Plaintiff cannot demonstrate that there was any delay in his return, and even if he could, such a minor delay is clearly not material.

Next, Plaintiff argues that "the act of unreasonably delaying Smith's return" – which as previously explained is completely unfounded – "gave the City a chance to promote and hire a number of younger Officers into positions at a higher level than Smith." (*See* Plaintiff's Response, Doc. 67, PageID 2384). This argument not only lacks merit, but it is also flat-out illogical. As explained in Defendant's Motion for Summary Judgment, it is undisputed that Plaintiff never expressed any legitimate interest in being promoted to anyone. During his deposition, Plaintiff admitted that, other than a brief conversation between himself and Chief Blackwell around the time Plaintiff started with the department in 2003 regarding possible advancement in the future, Plaintiff never expressed an interest or desire in being promoted to any supervisor position, at any point in time. (Smith Dep. 83:14-25, 84:18-22). Further, his conduct in May 2020 did not demonstrate the skills and trust required of someone to be promoted to a supervisory position. Moreover, Defendant has known for some time that it was necessary to hire and/or promote lieutenants in order for there to be supervisors available on most of all the shifts (Applegate Dep. 24:2-18; Blackwell Dep. 59:22-25, 60:1-3). Chief Blackwell had been pursuing the hiring of additional supervisor positions for several years, and Captain Allen additionally expressed a need

17

for greater supervisor capacity across the various shifts. (Blackwell Dep. 59:22-24; Allen Dep. 46:1-9). As explained in detail in Defendant's Motion, two of the individuals who were hired and/or promoted to the position of Lieutenant, Jason Jacobs and Mark Charles, and one individual who was offered but turned down the Lieutenant position, Ken Becker, had significant experience in supervisorial roles at other departments. (Blackwell Dep. 58:6-12, 59:1-4, 70:18-24; Allen Dep. 74:22-25). Additionally, the third individual who was promoted to Lieutenant, Greg Redmon, not only had merit within the department but also had taken on additional duties within the department and expressed a strong interest in being promoted in a conversation with Chief Blackwell months prior to his promotion. (Blackwell Dep. 56:22-25; Redmon Dep. 18-19). The hiring and/or promotion of these individuals in 2021 had nothing to do with Plaintiff or his assertions of age discrimination.

Moreover, as is abundantly clear from Plaintiff's Response, Plaintiff is not even pursuing a failure to promote claim. Rather, he attempts to support his retaliation claim by claiming that he was passed over for promotion to a position that he never even expressed an interest in. Defendant's action of returning Plaintiff to patrol officer upon his reinstatement, which is the same position he held before his termination, with increased pay under the collective bargaining agreement, same benefits, and same job duties – is a perfect example of a non-adverse employment action: "A 'materially adverse' change in the terms or conditions of employment is typically characterized 'by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities.'" *Momah v. Dominguez*, 239 Fed.Appx. 114, 123 (6th Cir. 2007) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)).

As a final point, Plaintiff's broad assertion in his Response that "allegations that a referral for examination may be retaliatory supports a prima facie case for retaliation" is clearly misplaced,

18

as it overlooks the drastic factual dissimilarities between those present here and those present in the very few cases where a fitness for duty examination has been found to support a prima facie case for retaliation. (See Plaintiff's Response, Doc. 67, PageID 2382). For example, Plaintiff cites two cases in support of this broad proposition, both of which are readily distinguishable. In the first, *Broach v. City of Cincinnati*, an unpublished case, a firefighter with the City of Cincinnati brought suit against the city alleging race discrimination and retaliation. *Broach v. City of Cincinnati*, No. 1:12-cv-66, 2013 WL 3712338. The plaintiff alleged several adverse employment actions against the city in support of his retaliation claim, one of which being the city's referral of plaintiff for a fitness for duty exam. *Id.* Specifically, the plaintiff argued that the fitness for duty referral caused a material change to the terms and conditions of his employment, because the city simultaneously removed him from duty and did not reinstate him until 16 months later. *Id.* at *8. Further, the plaintiff presented evidence showing that, during that 16-month period, Plaintiff exhausted his paid leave and was required to take significant unpaid leave. *Id.* Additionally, there was approximately a *13-month delay* between the time that the plaintiff was first put on leave for a fitness for duty evaluation and the actual date he received said evaluation. *Id.* at **3-4, 8-9 (emphasis added). Thus, the court concluded this evidence was sufficient to overcome the city's argument that the referral was not adverse. *Id.* at *8. It was also undisputed that the plaintiff's supervisor in that case referred the plaintiff for the fitness for duty examination as a direct result of her investigation of his EEO charge of discrimination, and thus, the causal connection element was easily satisfied. *Id.*

In the second case cited by Plaintiff, a police officer for the City of Milford brought suit against the city asserting several different claims, including an age discrimination claim under the ADEA and a retaliation claim. *Hodges v. City of Milford*, 918 F.Supp.2d 721. In support of both

19

of those claims, the plaintiff asserted several adverse actions, including that he was subject to *multiple* fitness for duty evaluations and had to obtain *multiple* medical clearances before he could return to work after being involuntarily being placed on a medical leave. *Id*. at 736. Further, the plaintiff cited documentary evidence indicating that his preclusion from being returned to work while undergoing the multiple fitness for duty evaluations may have caused a material change in benefits such as the loss of pay and/or the loss of compensatory, sick or vacation time. *Id*. Additionally, evidence in the record showed that a substantially younger officer than plaintiff who was under 40 years of age returned from medical leave without being subject to any fitness for duty evaluations or required medical clearances, unlike plaintiff who was subject to several fitness for duty evaluations and required medical clearances. *Id*. Under those circumstances, the court found that the plaintiff had met his prima facie burden. *Id.*

Unlike the circumstances present in both of those cases cited by Plaintiff, Plaintiff's fitness for duty examination was completed within a month and resulted in no loss of wages, benefits, or any other material change in the terms or conditions of employment—rather it was merely a precautionary measure taken, for valid reasons as detailed herein, immediately prior to Plaintiff's return to work. As a matter of law, the fitness for duty examination was not an adverse employment action.

> **2. Plaintiff has failed to establish the necessary causal link, and in fact, fails to offer any argument on this required element of his prima facie claim.**

Notwithstanding the fact that Plaintiff has not demonstrated that the fitness for duty examination is an adverse employment action, he also has failed to establish causation. The causal element of a prima facie case for retaliation requires a showing that a plaintiff's "protected activity was the but-for cause of the adverse employment action." *Kenney v. Aspen Technologies, Inc.*, 965

20

F.3d 443, 448 (6th Cir. 2020); *Goodsite v. Norfolk Southern Ry. Co.*, 573 Fed.Appx. 572, 582 (6th Cir. 2014).

Plaintiff has identified the filing of his age discrimination charge with the OCRC and EEOC as the protected activity under his retaliation claim. (Plaintiff's Second Amended Complaint, Doc. 50, PageID 189) ("Since the Arbitrator reinstated Mr. Smith to his employment with the City, he has been subjected to various discriminatory acts in retaliation for Mr. Smith initiating, filing and pursuing his age discrimination charges related to his termination from employment."). Therefore, to satisfy the causation element, he must establish that "but-for" the filing of his age discrimination charge, he would not have been referred for a fitness for duty examination. *Plaintiff has not even attempted to make this showing*. In his Response, Plaintiff merely states that he "disputes" Defendant's argument that Plaintiff cannot establish the causation element. (Plaintiff's Response, Doc. 67, PageID 2385). He further makes the bold and unsupported claim that "[t]here can be no dispute that the City's ordering of the examination was directly connected to the events which occurred one year prior." (*Id.*). That is the entirety of Plaintiff's argument, or lack thereof, on causation—certainly this does not satisfy the but-for standard. Plaintiff has not established temporal proximity between what he alleges as Defendant's retaliatory conduct and his charge of discrimination or otherwise pointed to evidence establishing a retaliatory motive of Defendant as the reason for the Defendant's alleged actions. These are required elements of his claim. *Stein v. Atlas Indus., Inc.*, 730 Fed.Appx. 313, 319 (6th Cir. 2018). He has not sustained his burden here.

Plaintiff's filing of a charge of discrimination was clearly not the but-for reason, nor was it even a factor in Defendant's action of referring Plaintiff for a fitness for duty examination prior to his return to work, and Plaintiff does not argue otherwise. Accordingly, Plaintiff has failed to

21

satisfy the causation element of his prima facie case for retaliation and, in turn, Plaintiff's retaliation claim fails as a matter of law.

> **3. Defendant has a legitimate nonretaliatory purpose for referring Plaintiff for a fitness for duty evaluation, and Plaintiff has failed to show that Defendant's nonretaliatory purposes are pretext for retaliation.**

Even if Plaintiff could establish a prima facie case—which he cannot—Defendant has legitimate nonretaliatory bases for referring Plaintiff for a fitness for duty examination. Additionally, Plaintiff has failed to demonstrate that Defendant's proffered reasons were pretext. Defendant required this examination because: (1) Plaintiff repeatedly indicated during his pre-disciplinary interview that his conduct and policy violations during the May 30th-31st, 2020 incidents were the result of stress; and (2) from the time Plaintiff was terminated to the time he was to return to work (more than a year), he had not performed any police work whatsoever. (Smith Dep. 79:2-7; Blackwell Aff., Ex. 10 Fitness for Duty Examination Letter; Admin. Inter. Cam.). The fitness for duty examination was required to ensure it was safe, both for Plaintiff and the community at large, to return Plaintiff to his position as a patrol officer. (Blackwell Aff., Ex. 10 Fitness for Duty Examination Letter; Blackwell Dep. 53; Applegate Dep. 22). The City's failure to require Plaintiff be evaluated under these circumstances would have been irresponsible, at best, and the City has required other officers to be evaluated when it has had concerns about their fitness as well.

In his Response, Plaintiff advances two meritless arguments regarding pretext. First, Plaintiff contends that Defendant's reasons for referring Plaintiff for the examination were pretextual because Defendant "relied on a statement Smith made over a year prior to his reinstatement." (Plaintiff's Response, Doc. 67, PageID 2383). Plaintiff repeatedly stated during his pre-disciplinary interview that his conduct and policy violations during the May 30th-31st, 2020

22

incidents were the result of stress. (Admin. Inter. Cam; Smith Dep. 79:2-7). Just because the statements were made a year prior does nothing to show pretext. In fact, it does the opposite. Plaintiff's statements show that he made stress-induced mistakes of a serious nature while on-duty a mere week and a half prior to being relieved from duty. Plaintiff did not perform any police work of any kind after that date and prior to his reinstatement. Thus, prior to returning Plaintiff to his role as a patrol officer upon his reinstatement, Defendant reasonably wanted to ensure that he was mentally fit to perform his duties as a patrol officer, given that one of the last times he served in that capacity, he made stress-induced mistakes of a serious and troubling nature.

Next, Plaintiff contends that Defendant's reasons for referring Plaintiff for the examination were pretextual because Defendant "ordered Smith to undergo a psychological examination, but did not also order a physical examination at the same time." (Plaintiff's Response, Doc. 67, PageID 2383-84). This argument is completely illogical. Defendant never had any reason to question Smith's physical ability to perform the job of patrol officer. Defendant has never expressed any such concern, and nothing in the record even remotely shows that any such concern was present. Because of Plaintiff's repeated admissions that his policing mistakes on May 30th-31st, 2020 were the result of stress, Defendant did have a valid concern regarding whether Plaintiff was mentally able to perform his required duties in a safe manner. As Plaintiff himself correctly notes in his Response, the collective bargaining agreement governing the terms and conditions of Plaintiff's employment clearly states that the City can require a fitness for duty examination if it has "reasonable cause to believe an employee is mentally **or** physically unable to perform required duties." (Plaintiff's Response, Doc. 67, PageID 2384) (emphasis added). Because Defendant was only concerned with whether Plaintiff was mentally able to perform his required duties in a safe

23

manner, Defendant only referred Plaintiff for a psychological examination. This, in no way, demonstrates pretext.

The evidence demonstrates that Defendant had legitimate nonretaliatory reasons for referring Plaintiff for a fitness for duty evaluation, and Plaintiff has failed to show that said reasons are pretextual. Moreover, and similar to Plaintiff's discrimination claim above, this Court is limited to determining whether Plaintiff's filing of charges with the OCRC/EEOC was the reason for Defendant's actions. Plaintiff's filing of same was clearly not the reason, nor was it even a factor, in Defendant's actions. To that end, Plaintiff cannot show any of the City's stated legitimate nonretaliatory reasons are a pretext for retaliation.

## III.  <u>CONCLUSION</u>

The protestations and arguments Plaintiff sets forth in his Response are nothing but an attempt to distract this Court from the real issues in this matter—Plaintiff's demonstrated and repeated policing errors and overall poor job performance. They do not create a genuine issue as to any fact material to this Court's analysis. The City had numerous reasons to terminate Plaintiff's employment following his misconduct on May 30 and 31, 2020, and each of those reasons was non-discriminatory and valid. Further, the evidence fails to suggest that unlawful retaliation played any part in the City's decisions regarding Plaintiff at any time. Because there is no dispute as to any material fact, and because Plaintiff cannot sustain any of his claims as a matter of law, Defendant is entitled to summary judgment on each of Plaintiff's claims. Plaintiff is not entitled to any of the relief he seeks. Defendant respectfully requests the Court grant summary judgment in its favor in full.

24

Respectfully submitted,

*/s/ Arthur P. Schoulties*
Beverly A. Meyer, Trial Counsel (0063807)
Arthur P. Schoulties, Co-Counsel (0086900)
Benjamin J. Reeb, Co-Counsel (100018)
BRICKER GRAYDON LLP
312 N. Patterson Blvd., Suite 200
Dayton, Ohio 45402
Telephone: 937.224.5300
Facsimile: 937.224.5301
E-mail: bmeyer@brickergraydon.com
             aschoulties@brickergraydon.com
             breeb@brickergraydon.com
*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

This certifies that a true and accurate copy of the foregoing was served upon Matthew Stokely, Attorney for Plaintiff, via the Court's electronic filing system this 21st day of December 2023.

*/s/ Arthur P. Schoulties*
Arthur P. Schoulties (0086900)
BRICKER GRAYDON LLP