UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JEFF SMITH,

     Plaintiff,                       Case No. 3:22-cv-96

vs.

CITY OF UNION POLICE DEPARTMENT,[1]    District Judge Michael J. Newman

     Defendant.

---

**ORDER: (1) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Doc. No. 57); (2) DIRECTING THE CLERK OF COURTS TO ENTER JUDGMENT IN FAVOR OF DEFENDANT; AND (3) TERMINATING THIS CASE ON THE DOCKET**

---

This is a discrimination and retaliation case. Plaintiff Jeff Smith—51 years old at the time in question—alleges that his employer, Defendant City of Union, Ohio ("City"), discriminated and retaliated against him in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*., and the controlling Ohio Civil Rights Act provision, Ohio Rev. Code § 4112.02. Both sides are represented by counsel. This civil case is before the Court on the City's motion for summary judgment. Doc. No. 57. Smith responded (Doc. No. 67) and the City replied (Doc. No. 69). Thus, the motion is ripe for review. For the reasons that follow, the Court grants the motion.

---

[1] Plaintiff originally named the City of Union Police Department as Defendant, which appears on the docket. Doc. No. 1. However, Plaintiff's second amended complaint named the City of Union, Ohio as Defendant instead. Doc. No. 50. Thus, the only Defendant in this case is the City of Union, Ohio.

## I.     BACKGROUND

### A.  Smith's Employment with the City[2]

Smith was born on May 12, 1969, and was over 40 at the time of the events here in question.  Doc. No. 64 at PageID 1405.  He was hired by the City to work as an officer in the police department on February 14, 2003.  *Id.*   Smith is the City's most trained police officer and is certified as an evidence technician.  Doc. No. 57-1 at PageID 363, 65.  However, Smith has a history of written reprimands, employee improvement plans, policy violations, and a suspension. Doc. No. 62 at PageID 1355.

Michael Blackwell—the City's Chief of Police—supervises Smith, the other officers, the lieutenants, and the captain.  Doc. No. 57-1 at PageID 363.  A collective bargaining agreement governs the terms and conditions of Smith's employment.  Doc. No. 64 at PageID 1423.  While Smith's employment was terminated on August 3, 2020, he was reinstated as an officer on August 16, 2021 following a union arbitration proceeding and is currently employed by the City in that capacity.  Doc. No. 57-1 at PageID 366, 368.

### B.  Alleged Incident of Age Discrimination

On May 30, 2020, Smith was dispatched to 3318 Phillipsburg Union Road to investigate a report of a suspicious unoccupied vehicle parked near a church.  Doc. No. 57-2 at PageID 373. Greg Redmon—another officer in a separate vehicle—added himself to the call and arrived at the church prior to Smith.  *Id.*; Doc. No. 64 at PageID 1415.  Soon after Smith entered the church parking lot, the vehicle started moving, cut through the grass, and turned onto Phillipsburg Union Road.  Doc. No. 57-2 at PageID 373.  Smith followed the vehicle.  *Id.*  He accelerated to approximately 75 miles per hour to pursue the vehicle in a 35 mile-per-hour zone.  *Id.*  During

---

[2] The Court takes this opportunity to remind counsel for both sides to always cite the ECF document number and PageID when referring to evidence in the record.  S.D. Ohio Civ. R. 7.2(b)(3).

the pursuit, the vehicle engaged in multiple dangerous maneuvers, including running a red light. *Id.* While following the vehicle, Smith violated a City policy by not wearing his seatbelt. Doc. No. 57-19 at PageID 673. The pursuit ended when the vehicle crashed into a wall. Doc. No. 57-2 at PageID 373.

After the crash, Smith pulled behind the vehicle and exited his cruiser. *Id.* A woman got out of the driver's seat of the vehicle. *Id.* In the process of complying with Smith's order to put her hands on the vehicle, the woman collapsed and fell to the ground. *Id.* Smith called dispatch to request a medic but did not provide the location of the crash site right away. Doc. No. 57-19 at PageID 636. He checked to make sure the woman was breathing and not bleeding, but he did not provide any other medical aid. Doc. No. 64 at PageID 1419. During the encounter, Smith called the woman "honey" and "sweetheart[.]" *Id.* at PageID 1419-20. Smith admitted that this was "disrespectful" behavior that violated City policy. Doc. No. 57-13 at PageID 520; Doc. No. 57-20 at PageID 1082-83.

Redmon, as the backup officer on the call, was trailing behind Smith. Doc. No. 63 at PageID 1391. Soon after the woman collapsed, Redmon arrived at the scene of the crash with his cruiser lights and sirens activated. Doc. No. 57-2 at PageID 373; Doc. No. 57-19 at PageID 707. He notified dispatch of the location of the crash, and medics eventually arrived to attend to the woman. Doc. No. 57-2 at PageID 373; Doc. No. 57-19 at PageID 784.

Smith failed to activate the cruiser's motor vehicle recorder during the entirety of the incident, which is a violation of City policy. Doc. No. 64 at PageID 1420. Smith admitted that when he was investigating the scene of the crash, he failed to collect evidence and failed to properly change his gloves to avoid cross-contamination. Doc. No. 57-20 at PageID 1131, 1143. Redmon also admitted that during the incident, he did not turn his body camera on early enough,

3

change his gloves properly, or render aid to the woman. *Id.*; Doc. No. 63 at PageID 1392. Redmon was not thoroughly investigated or disciplined for these potential policy violations. Doc. No. 60 at PageID 1308.

The next day (May 31, 2020), Smith and Michael Hoover—another officer—were sent to investigate the scene of a reported burglary. Doc. No. 64 at PageID 1415. Smith was the only evidence technician at the scene. Doc. No. 57-19 at PageID 997. He collected bolt cutters as evidence, but failed to properly collect other tools at the scene that could have been used to collect DNA. *Id.* at PageID 764, 1202. Redmon was not involved in the incident on May 31, 2020. Doc. No. 64 at PageID 1415.

On June 1, 2020, Captain Chris Allen initiated an administrative investigation of Smith's conduct. Doc. No. 57-13 at PageID 518. Based on his investigation, Allen identified eight City of Union Police Department policies that Smith had violated and recommended that he be disciplined for his actions. *Id.* at PageID 518-24. Smith was placed on administrative leave on June 11, 2020. Doc. No. 64 at PageID 1423.

Smith attended a pre-disciplinary hearing on July 8, 2020 to discuss the incidents that occurred on May 30 and 31, 2020. Doc. No. 64 at PageID 1409. During the hearing, Blackwell told Smith that he had "watched videos of younger officers that didn't make the mistakes that [Smith] made." *Id.* at PageID 1358. Blackwell testified that he made this statement during the conference because he "believe[d] a lesser experienced officer would have done better" than Smith. *Id.* The City explained that Smith's numerous policy violations endangered himself and the public and put the City at risk of liability. Doc. No. 64-9 at PageID 1770. The City terminated Smith's employment on August 3, 2020. Doc. No. 64 at PageID 1447.

Smith filed a grievance through his union representative challenging his termination on August 6, 2020, which proceeded to an arbitration hearing.  Doc. No. 67-1 at PageID 2388.  The arbitrator sustained Smith's grievance, finding that his misconduct "did not rise to a level of seriousness that would justify his termination."  *Id.* at PageID 2437.  On June 8, 2021, the City was ordered to reinstate Smith with full back pay and seniority, with Smith's only penalty being a three-day unpaid suspension.  *Id.* at PageID 2447; Doc. No. 57-1 at PageID 368.

### C.  Reporting and Alleged Instances of Retaliation

Smith timely filed an Equal Employment Opportunity Commission ("EEOC") charge on January 8, 2021 alleging age discrimination and received a Notice of Right to Sue on January 12, 2022.  Doc. No. 1-1 at PageID 8; Doc. No. 50 at PageID 186.  He brought this lawsuit against the City on April 12, 2022.  Doc. No. 1.  Smith then filed a second EEOC charge on May 16, 2022 alleging retaliation and received a Notice of Right to Sue on September 1, 2022.  Doc. No. 50 at PageID 190.  With leave of Court, Smith amended his complaint on both October 28, 2022 and July 13, 2023.  Doc. Nos. 20, 50.

After the arbitration award, Blackwell sent Smith a letter on July 12, 2021 requiring him to attend a fitness for duty examination before returning to work.  Doc. No. 57-15 at PageID 530.  The letter stated that Smith was being referred for an examination because of his "repeated statements during [his] June 9, 2020" pre-disciplinary hearing that he was "stressed when [he] engaged in on-duty conduct occurring on May 30, 2020."  *Id.*  Additionally, the City was concerned about whether Smith was fit to perform police officer duties because he had not performed any police work since he was placed on administrative leave on June 11, 2020.  *Id.*  Smith attended this examination on July 16, 2021.  Doc. No. 64 at PageID 1435.  According to

Smith, the doctor submitted a report to the City on July 24, 2021 clearing him to return to work. Doc. No. 64 at PageID 1435.

Prior to Smith's return to work, the City hired two lieutenants. Doc. No. 62 at PageID 1364-65. On July 15, 2021, the City promoted Redmon from officer to lieutenant. *Id.* at PageID 1364. That same day, the City also hired an officer from a different city as a lieutenant. *Id.* at PageID 1365. Allen and Blackwell testified that the City had been looking to hire more lieutenants as supervisors to fill various shifts. *Id.*; Doc. No. 60 at PageID 1307. Besides having one conversation with Blackwell about future advancement opportunities when Smith first started his job in 2003, Smith did not apply for—or express an interest in—a lieutenant position. Doc. No. 64 at PageID 1424.

Smith returned to work as an officer on August 16, 2021. *Id.* He was compensated in full for all backpay between the time of his termination and his return to work, excluding his three-day suspension. *Id.* at PageID 1444; Doc. No. 57-1 at PageID 368.

## II.    STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The burden is on the moving party to show no genuine issue of material fact exists. *Celotex*, 477 U.S. at 323; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the

absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A) and (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he non-moving party . . . may not rest upon [his or her] mere allegations or denials of the adverse party's pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citations omitted).

Additionally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id.* at 406.

### III.     ANALYSIS

Smith raises two categories of claims: (1) age discrimination in violation of the ADEA and Ohio Revised Code § 4112.02; and (2) retaliation in violation of the ADEA and Ohio Revised Code § 4112.02. Doc. No. 50 at PageID 188-91. The City moves for summary judgment in its favor as to all claims. Doc. No. 57 at PageID 318.

**A.  Age Discrimination Claims[3]**

Smith first alleges that he suffered age discrimination in violation of both the ADEA and Ohio law when the City terminated his employment.  Doc. No. 50 at PageID 188.  The Court will address these claims together because "[a]ge discrimination claims brought under the Ohio statute are 'analyzed under the same standards as federal claims brought under the [ADEA].'"  *Blizzard v. Marion Tech. Coll.*, 698 F.3d 275, 283 (6th Cir. 2012) (quoting *Wharton v. Gorman-Rupp Co.*, 309 Fed. App'x 990, 995 (6th Cir. 2005)).

Under the ADEA, an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  The plaintiff has "the burden of persuasion to demonstrate 'by a preponderance of the evidence … that age was the "but-for" cause of the challenged employer decision.'"  *Willard v. Huntington Ford, Inc.*, 952 F.3d 795, 806 (6th Cir. 2020) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).  The plaintiff may present either direct or indirect evidence to meet this burden.  *Id.*  Here, Smith argues that there is both direct and indirect evidence of age discrimination.  Doc. No. 67 at PageID 2370-82.

**1.  Alleged Direct Evidence of Discrimination**

First, Smith argues that a statement Blackwell made during the pre-disciplinary conference constitutes direct evidence of age discrimination.  Doc. No. 67 at PageID 2371.

---

[3] To establish constitutional standing in an ADEA claim, "a plaintiff must show that he was 'personally injured by the defendant's alleged discrimination and that his injury will likely be redressed by the requested relief.'"  *Phillips v. Cohen*, 400 F.3d 388, 396 (6th Cir. 2005) (quoting *Melendez v. Illinois Bell Tel. Co.*, 79 F.3d 661, 668 (7th Cir. 1996)).  Although the issue of standing is not briefed by the parties, the Court notes that Smith's reinstatement with backpay and benefits may well moot his age discrimination claims here, as it appears he has suffered no actionable damages due to his termination. However, Smith was put on leave without pay for three days.  Doc. No. 57-1 at PageID 368.  The Court finds that, for purposes of recovering damages for three days of unpaid leave, Smith has standing to bring his age discrimination claims.

Evidence is direct if it establishes a fact without requiring the factfinder to make inferences. *Scott v. Potter*, 182 Fed. App'x 521, 525 (6th Cir. 2006). In determining whether a statement is direct evidence of discrimination, courts consider whether it was (1) made by a decisionmaker, (2) related to the adverse employment decision at issue, (3) made proximate in time to the adverse employment decision, and (4) more than a vague or ambiguous remark. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 477-78 (6th Cir. 2002). "Direct evidence of discrimination is evidence of conduct or statements by persons involved in making the employment decision directly manifesting a discriminatory attitude, of a sufficient quantum and gravity that would allow the factfinder to conclude that attitude more likely than not was a motivating factor in the employment decision." *Scott*, 182 Fed. App'x at 525-26 (internal quotations omitted). This means that "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age," constitute direct evidence of discrimination. *Id.* at 526 (internal quotations omitted). "An isolated, ambiguous, or abstract comment, however, will not suffice." *Sanders v. Lincoln Cnty, Tenn.*, 231 F.Supp.3d 290, 295 (E.D. Tenn. 2017) (internal quotations omitted).

During the pre-disciplinary conference, Blackwell told Smith that he had "watched videos of younger officers that didn't make the mistakes that [Smith] made." Doc. No. 62 at PageID 1358. Blackwell testified that he made this statement during the conference because he "believe[d] a lesser experienced officer would have done better" than Smith. *Id.* The Court finds this single comment is not direct evidence of discrimination. *See Sanders*, 231 F.Supp. at 296 (concluding that "[m]erely observing that Plaintiff was an 'older man' appears to be the quintessential ambiguous remark warned against by the Sixth Circuit, as it requires an inference as well as context to be construed as discriminatory"). Several inferences would have to be

made to conclude that Blackwell's statement of observation ("younger officers [did not] make the mistakes that [Smith] made") reveals a discriminatory attitude ("Smith made those mistakes, and should be fired, because he is an older officer"). *See Scott*, 182 Fed. App'x at 526 (finding the single statement—"Why don't you retire and make everybody happy"—would require inferences to jump to the conclusion that the statement was implying the plaintiff was too old to do the job). Even viewed in the light most favorable to Smith, Blackwell's statement is vague and does not show that Smith was fired because of his age. Thus, Smith has not provided direct evidence of age discrimination.

### 2. Alleged Indirect Evidence of Discrimination

When a plaintiff relies upon indirect evidence of age discrimination, the age discrimination claim is "analyzed under the *McDonnell Douglass Corp. v. Green*, 411 U.S. 792 […] (1973), burden-shifting framework." *Willard*, 952 F.3d at 807. Under this framework, the plaintiff must first establish a *prima facie* case of age discrimination. *Id.* If the plaintiff has produced enough evidence that a reasonable jury could conclude a *prima facie* case has been established, the burden of production "shifts to the employer to offer a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If the employer produces a sufficient reason, "the burden shifts back to the plaintiff to establish that the proffered [reason is] simply pretext for age discrimination." *Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 887 (6th Cir. 2020).

#### i. *Prima Facie* Case of Age Discrimination

To establish a *prima facie* case of age discrimination, Smith must show: (1) he is a member of a protected class; (2) he was qualified for the job in question; (3) an adverse employment action was taken against him; and (4) "circumstances that support an inference of

discrimination." *Blizzard*, 698 F.3d at 283 (internal quotations omitted). The *prima facie* burden is intended "to eliminate the most common nondiscriminatory reasons for the employer's action." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 813 (6th Cir. 2011). A plaintiff's "burden at the *prima facie* stage is 'not onerous' and 'poses a burden easily met.'" *Id.* (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000)). The City only challenges Smith's establishment of the fourth prong: circumstances of discrimination. Doc. No. 57 at PageID 337.

To satisfy the fourth prong of a *prima facie* case in an age discrimination claim, a plaintiff can show that another employee of similar qualifications, who was not a member of the protected class, was treated more favorably. *Moore v. AMPAC*, 645 Fed. App'x 495, 498 (6th Cir. 2016). Smith argues that "Redmon was similarly situated, younger, and treated more favorably than [him]." Doc. No. 67 at PageID 2377. This argument fails to satisfy the fourth prong for two reasons.

First, Smith does not cite to anything in the record that confirms Redmon's age. *See* Doc. No. 67. Smith merely asserts that Redmon is not a member of the protected class. *Id.* at PageID 2375-78. While the burden to establish the prongs of a *prima facie* case is not onerous, the Court does not have a duty to search the record for evidence supporting a party's assertions. *See Provenzano*, 663 F.3d at 813; *Guarino*, 980 F.2d at 404. Failing to provide the age of a comparator employee weighs in favor of finding that Smith did not establish a *prima facie* case. *See Marano v. Aircraft Braking Sys., Inc.*, 138 F.Supp.2d 940, 950 (N.D. Ohio 2001).

Second, Smith does not adequately show that Redmon is similarly situated in all relevant respects. To be considered "similarly situated" to a plaintiff in the disciplinary context, an employee "'must have dealt with the same supervisor, have been subject to the same standards

11

and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). These factors are all relevant to this case because Smith seeks to compare himself to Redmon: another officer who responded to the same police call on May 30, 2020. Doc. No. 67 at PageID 2375.

While it appears that Redmon and Smith had the same job duties and were supervised by Chief Blackwell, Smith does not adequately show that the two engaged in the same conduct without differentiating circumstances. Doc. No. 62 at PageID 1352, 1355. Viewed in the light most favorable to Smith, the record shows that Redmon was somehow involved in the May 30, 2020 pursuit. Doc. No. 60 at PageID 1308. Redmon also violated some policies that day, including not turning his body camera on early enough, not changing his gloves properly, and not rendering aid to the driver. *Id.*; Doc. No. 63 at PageID 1392. Redmon was not disciplined for these policy violations. Doc. No. 60 at PageID 1308.

However, Smith does not address or dispute other relevant facts in the record: (1) Smith had a history of written reprimands, employee improvement plans, policy violations, and a suspension while Redmon did not (Doc. No. 62 at PageID 1355); (2) Smith admitted Redmon did not make all the same policy violations as him on May 30, 2020, such as initially pursuing the vehicle, not activating a motor vehicle recorder, and speaking disrespectfully to a member of the public (Doc. No. 64 at PageID 1415, 1418-20); and (3) Redmon had no involvement in the incident of May 31, 2020 (Doc. No. 64 at PageID 1415). Thus, even viewed in the light most favorable to Smith, the record shows that there were multiple meaningful differentiating circumstances that prevent him from being similarly situated to Redmon.

Additionally, Smith briefly argues that Blackwell's statement regarding "younger officers" serves as sufficient circumstantial evidence to satisfy the fourth prong of his *prima facie* case. Doc. No. 67 at PageID 2378. However, for the reasons explained above, Blackwell's single observational statement does not reveal discriminatory animus sufficient to establish evidence of age discrimination. *See Supra* Part III(A)(1).

For the foregoing reasons, the Court concludes that Smith has not produced sufficient evidence for a reasonable jury to find he satisfied his *prima facie* burden. However, for the purpose of completeness, the Court will analyze the two remaining parts of the *McDonnell Douglas* framework.

### ii. Legitimate Non-Discriminatory Reason

Once an employee has established a *prima facie* case of age discrimination, "the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for" terminating the plaintiff's employment. *Provenzano*, 663 F.3d at 814. To satisfy this burden, the City need only "raise a genuine issue of fact as to whether it discriminated against" Smith. *See id.* at 814-15. To do this, the City "must clearly set forth, through the introduction of admissible evidence, the reasons for" terminating Smith's employment. *See id.* at 815.

The City asserts that it terminated Smith's employment "because he engaged in a series of unacceptable mistakes over a two-day period." Doc. No. 57 at PageID 343. The City explains that Smith violated multiple police polices by initiating and maintaining an unjustified pursuit, failing to wear a seatbelt, failing to request assistance, failing to render aid to a suspect, failing to notify dispatch of the location of the crash, treating a member of the public with disrespect, failing to properly change his gloves when handling evidence, failing to collect evidence, and failing to turn on his vehicle camera. *Id.* at PageID 343-44. Smith's actions—

13

even disregarding the disputed justification for the pursuit—endangered himself and the public, complicated criminal investigations, and exposed Defendant to financial liability. *Id.* at PageID 345. The City provided evidence of this reasoning through an Administrative Investigation Report and the Arbitration hearing transcript. Doc. Nos. 57-13, 57-19, 57-20. Therefore, the City has met its burden of production to articulate one or more legitimate, nondiscriminatory reasons for firing Smith. *See Hughey v. CVS Caremark Corp.*, 629 Fed. App'x 648, 652 (6th Cir. 2015) (concluding that an employee's violation of company policies is a nondiscriminatory reason for termination).

### iii. Pretext

After "an employer offers nondiscriminatory reasons for an adverse employment action, the burden shifts back to the employee to prove that the stated reason for [his] termination is pretextual." *Blizzard*, 698 F.3d at 285. "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Provenzano*, 663 F.3d at 815 (internal quotation marks omitted).

First, Smith argues that the City's proffered reason for his termination has no basis in fact because his pursuit of the vehicle on May 30, 2020 was justified. Doc. No. 67 at PageID 2380. However—even assuming this is so—Smith cannot show that the City's reasoning had no basis in fact. Smith admitted that he violated multiple City policies, including: (1) failing to turn on his motor vehicle camera (Doc. No. 57-20 at PageID 1044); (2) failing to put on his on his seatbelt (*Id.* at PageID 1055); (3) failing to render aid to an injured suspect (*Id.* at PageID 1079); (4) treating a member of the public disrespectfully (*Id.* at PageID 1082-83); (5) failing to collect

14

evidence (*Id.* at PageID 1131); and (6) failing to properly change his gloves (*Id.* at PageID 1143). Thus, Smith failed to show there was "no basis in fact" for his termination because he violated multiple policies, putting himself and others in danger. *See McNeal v. City of Blue Ash*, No. 1:19-cv-1072, 2023 WL 218498, at *8 (S.D. Ohio Feb. 23, 2023) (finding that a plaintiff could not establish a police department's reasoning had no basis in fact when he conceded he violated various police policies).

Second, Smith briefly argues that the City's proffered reason for his termination was insufficient to warrant his termination because Redmon was a similarly situated, younger employee who was not fired. Doc. No. 67 at PageID 2381-82. This argument also fails because, as explained above, Smith does not provide the Court with evidence verifying Redmon's age or establishing that Redmon was similarly situated in all relevant aspects, such as disciplinary background and aggregate policy violations. *Supra* Part III(A)(1); *see McNeal*, No. 1:19-cv-1072, 2023 WL 218498, at *8 (concluding that a police officer plaintiff could not establish pretext by showing other officers were not disciplined for individual policy violations when the plaintiff had multiple policy violations over two years).

Therefore, even when viewed in the light most favorable to Smith, no evidence suggests that the City's proffered legitimate, nondiscriminatory reasons for terminating his employment lacked a basis in fact, did not actually motivate the decision, or were insufficient to motivate the decision. Because Smith "has not established a genuine dispute of material fact that age discrimination was the 'but-for' cause of" the City's decision to fire him, the Court will grant the City's motion for summary judgment on this claim. *See Provenzano*, 663 F.3d at 818.

### B. Retaliation Claims

Smith next asserts that the City retaliated against him in violation of the ADEA and Ohio law by requiring him to submit to a fitness for duty examination to delay his return to work and hire and promote younger lieutenants.[4] Doc. No. 67 at PageID 2382-85. "The ADEA prohibits employers from retaliating against an employee for opposing or reporting age discrimination." *Blizzard*, 698 F.3d at 288. The Sixth Circuit analyzes ADEA and Ohio retaliation claims under the same standards. *Id.* As with a discrimination claim—in the absence of direct evidence of retaliation—courts analyze ADEA retaliation claims using the *McDonnell Douglas* framework. *Longs v. Ford Motor Co.*, 647 F.Supp.2d 919, 932 (W.D. Tenn. 2009) (citing *Imwalle v. Reliance Medic. Prod., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008)). The Court will use the *McDonnell Douglas* framework because Smith asserts only circumstantial evidence of retaliation. Doc. No. 67 at PageID 2382-85.

To prove a *prima facie* case of retaliation under the ADEA, Smith "must show that (1) [he] engaged in a protected activity, (2) the defending party was aware that the [plaintiff] had engaged in that activity, (3) the defending party took an adverse employment action against the employee, and (4) there is a causal connection between the protected activity and [the] adverse employment action." *Id.* (internal quotation marks omitted). If Smith prevails on his *prima facie* case, "the burden of production shifts to the defendant to 'offer a non-[retaliatory] reason for the adverse employment action.'" *Id.* (quoting *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009)). If the City meets its burden, Smith must then demonstrate that the City's proffered reason was pretext for retaliation. *Id.* .

---

[4] Smith alleges other instances of retaliation in his amended complaint. Doc. No. 50 at PageID 189-91. However, the Court considers these allegations abandoned because Smith did not adequately address them in his summary judgment opposition memorandum. Doc. No. 67 at PageID 2382-85. *See, e.g., Hicks v. Concorde Career Coll.*, 449 Fed. App'x 484, 487 (6th Cir. 2011) (concluding that a plaintiff must present evidence to establish a *prima facie* case of retaliation).

### 1. *Prima Facie* Case of Retaliation

The City asserts that Smith cannot establish a *prima facie* case of retaliation because he does not show an adverse employment action or a causal connection. Doc. No. 57 at PageID 346.

### i. Adverse Employment Action

To satisfy the third prong of a *prima facie* case of retaliation, Smith must show that the City took "a materially adverse action" against him. See *Blizzard*, 698 F.3d at 290. "An adverse action is material if it 'would dissuade[] a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Lahar v. Oakland Cnty.*, 304 Fed. App'x 354, 357 (6th Cir. 2008)). Typically, a materially adverse employment action involves "a change in pay, benefits, seniority, rank, or job status." *Blackburn v. Shelby Cnty.*, 770 F.Supp.2d 896, 925 (W.D. Tenn. 2011).

Smith asserts that requiring him to undergo a fitness for duty examination—and thus delaying his return to work—was a materially adverse action because it allowed the City to hire and promote younger officers to fill lieutenant positions. Doc. No. 67 at PageID 2382-84. The Sixth Circuit holds otherwise; requiring an employee to undergo a mental or physical examination for legitimate reasons before returning to work does not constitute a materially adverse action. *Pena v. City of Flushing*, 651 Fed. App'x 415, 422 (6th Cir. 2016). However, requiring an examination can be considered materially adverse if a similarly situated, non-protected employee was not required to go through the same procedures. *Hodges v. City of Milford*, 918 F.Supp.2d 721, 739 (S.D. Ohio 2013). An examination could also be materially adverse if it requires the plaintiff to take significant unpaid leave. *Broach v. City of Cincinnati*, No. 1:12-cv-66, 2013 WL 3712338, at *8 (S.D. Ohio July 12, 2013).

Smith cannot show that requiring him to undergo a fitness for duty examination was a materially adverse action. The City offers two legitimate reasons for ordering the examination: (1) Smith repeatedly indicated in his pre-disciplinary hearing that his policy violations were the result of stress; and (2) he had not performed any police work for over a year. Doc. No. 57 at PageID 357 (citing Doc. No. 57-15 at PageID 530). It is reasonable for the City to want to verify that Smith's self-recognized stress would not interfere with his ability to perform the demanding—and sometimes dangerous—job of a police officer.

Smith argues that by delaying his return to work, the City prevented him from being promoted to a lieutenant position. Doc. No. 67 at PageID 2384. However, other than a conversation with Blackwell about future advancement opportunities when Smith first started his job in 2003, he did not apply for—or even express an interest in—a promotion to a supervisor position. Doc. No. 64 at PageID 1424. Additionally, Smith received full backpay for the time he spent waiting for the examination to occur. Doc. No. 64 at PageID 1444. Finally, Smith does not provide evidence of a similarly situated, non-protected employee who was not required to undergo a fitness for duty evaluation. *See* Doc. No. 67 at PageID 2382-85. Thus, Smith has not shown that the fitness for duty examination was an adverse employment action.

Consequently, even viewed in the light most favorable to Smith, a reasonable trier of fact could not conclude that the fitness for duty examination was a materially adverse action. Smith has thus failed to satisfy the third prong of his *prima facie* case with regards to the retaliation claim. Summary judgment in the City's favor on the ADEA and Ohio law retaliation claims is thus appropriate on this independent basis.

### ii.    Causation

To satisfy the fourth prong, Smith must establish a causal link between the alleged adverse action and the EEOC charge. *See Blizzard*, 698 F.3d at 289. "Causation is found where the plaintiff 'proffer[s] evidence sufficient to raise the inference that [the] protected activity was the likely reason for the adverse action.'" *Lindsay v. Yates*, 578 F.3d 407, 418 (6th Cir. 2009) (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 596 (6th Cir. 2007)).

Smith cannot show causation. He does not provide any direct or indirect evidence that raises the inference that filing the EEOC charge was the reason for the alleged adverse actions. *See* Doc. No. 67 at PageID 2385. Smith merely asserts—without any citations to the record— that "[t]here can be no dispute that the City's ordering of the examination was directly connected to the events which occurred one year prior." *Id.* The City admits that it ordered the examination partially due to Smith's statements in his pre-disciplinary hearing. Doc. No. 57 at PageID 357. While this may show a connection between Smith's alleged misconduct and the fitness for duty examination, Smith does not explain how the EEOC charge itself caused the City to order the examination. *See* Doc. No. 67 at PageID 2385. The non-moving party cannot rest on the pleadings and cannot expect the Court to search the entire record for material facts. *Guarino*, 980 F.2d at 404. Therefore, Smith has failed to establish the fourth prong of his *prima facie* case. Summary judgment in the City's favor on the retaliation claims is also appropriate on this independent basis.

### 2.   Legitimate, Non-Retaliatory Reason

Assuming, *arguendo*, that Smith had established a *prima facie* case, the burden shifts to the City to prove a legitimate, non-retaliatory reason for its actions. *See Blizzard*, 698 F.3d at 288. The City gave explanations—supported by evidence—for the alleged adverse action. First,

the City asserts that it required Smith to undergo a fitness for duty examination because he repeatedly indicated in his pre-disciplinary interview that his policy violations were the result of stress and he had not performed any police work for over a year. Doc. No. 57 at PageID 357 (citing Doc. No. 57-15 at PageID 530). Second, the City states that it promoted or hired lieutenants while Smith was on leave because it was in need of more supervisors for various shifts. *Id.* (citing Doc. No. 60 at PageID 1307). Therefore, the City has provided sufficient legitimate, not-retaliatory reasons to satisfy its burden of production.

### 3. Pretext

After the employer provides a legitimate, non-retaliatory reason for its actions, the burden shifts back to plaintiff to show that the proffered reason was pretext for retaliation. *Blizzard*, 698 F.3d at 288. A plaintiff can "show pretext by demonstrating that: '(1) the employer's stated reason […] has no basis in fact, (2) the reason offered […] was not the actual reason for [the adverse action], or (3) the reason offered was insufficient to explain the employer's action." *Spengler v. Worthington Cylinders*, 615 F.3d 481, 493 (6th Cir. 2010).

Smith offers two vague arguments regarding pretext. First, he states that the City's reasoning is merely pretextual "because the City relied on a statement Smith made over a year prior to his reinstatement[.]" Doc. No. 67 at PageID 2383. Second, Smith argues that the City's reasoning is pretextual because it "ordered Smith to undergo a psychological examination, but did not also order a physical examination at the same time." *Id.* at PageID 2383-84. Neither of these arguments offer an explanation as to why the City's proffered reason had no basis in fact, was not the actual reason for its actions, or was insufficient to explain its actions. Smith has thus failed to meet his burden to establish pretext.

Consequently, a reasonable trier of fact "could not find retaliation on these facts, and" summary judgement is proper on both the ADEA and Ohio law retaliation claims.  *Mulhall*, 287 F.3d at 554.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the City's motion for summary judgment (Doc. No. 57) and **TERMINATES** this case on the docket.

**IT IS SO ORDERED.**

  May 7, 2024                              s/Michael J. Newman           
                                                  Hon. Michael J. Newman
                                                  United States District Judge